41 P.3d 731

**COUNTRYWIDE FUNDING CORPO-RATION, Plaintiff/Counterclaim Defendant–Appellee,**

v.

**Eugene S. BILOTTI, Defendant/Cross-claim Defendant–Appellant,**

**Associates Financial Services Company of Hawaii, Inc., Defendant/Counterclaimant Crossclaimant–Appellee,**

**Robin B. Bilotti, Peoples State Bank of Shepard, Texas, John Does 2–50, Defen-dants/Crossclaim Defendants–Appellees,**

and

**Heirs or Personal Representatives of Rob-in B. Bilotti, Deceased, Identified Defen-dant John Doe 1/Crossclaim Defendant–Appellee.**

**No. 23493.**

Intermediate Court of Appeals of Hawai'i.

Jan. 28, 2002.

Anthony L. Ranken, on the brief, Wailuku, for defendant/crossclaim defendant-appellant Eugene S. Bilotti.

BURNS, C.J., WATANABE, and FOLEY, JJ.

Opinion of the Court by WATANABE, J.

The issue in this appeal is whether Defendant–Appellant Eugene S. Bilotti (Eugene) is entitled to interest on the $27,500.00 he was awarded, pursuant to a divorce decree, from the surplus proceeds of a foreclosure sale of a residence he owned with his deceased ex-wife, Defendant–Appellee Robin B. Bilotti (Robin). The surplus proceeds, totaling $30,383.62, had been deposited in an interest-bearing account, in accordance with a September 30, 1990 court order, and had grown to $41,193.85 by August 19, 1998, when Eugene filed a motion for an order releasing part of the surplus funds to him.

We agree that Eugene was entitled to interest on the $27,500.00 amount. Accordingly, we vacate the Judgment entered by the Circuit Court of the Second Circuit (the circuit court) on May 8, 2000, as well as those parts of the circuit court's orders upon which the Judgment [1] rested and which refused to grant Eugene interest, and remand for further proceedings consistent with this opinion.

## BACKGROUND

On June 6, 1986, Eugene and Robin (collectively, the parties), who were then married, took out a $137,638.00 mortgage loan from The McDonough Financial Corporation to purchase a marital residence in Kīhei, Maui (the residence). In December 1986, Eugene and Robin got divorced. Pursuant to an Agreement Incident to Divorce (divorce agreement) filed in the Family Court of the Second Circuit (the family court) on December 5, 1986, which was apparently merged into the divorce decree,[2] Eugene and Robin agreed to the following terms regarding the residence:

4. *Real Property.* [The residence] shall continue to be owned by the parties as tenants in common, subject to the following:

(a) [Robin] shall be permitted exclusive use of the residence until such use is terminated as specified below. During [Robin's] exclusive use, she shall pay

---

1. The Honorable Shackley F. Raffetto (Judge Raffetto) entered the judgment and orders which are being challenged in this appeal.

2. Although the Agreement Incident to Divorce is included in the record on appeal, the actual divorce decree is not in the record.

the monthly mortgage payments to Country Wide [sic] Mortgage Company and the monthly home improvment [sic] loan payments to [Associates Financial Services Company of Hawaii, Inc. (Associates)[3]] and sufficienty [sic] maintain the residence. During [Robin's] exclusive use, she shall be entitled to receive, as her sole and seperate [sic] property and free of any claim by [Eugene], the rents for [the residence].

(b) [Robin's] exclusive use of the residence shall cease whenever any of the following events occur:

(1) [Robin] no longer resides at the residence; or

(2) [Robin] dies; or

(3) [Robin] fails to make two mortgage payments to Country Wide [sic] Mortgage Company; or

(4) [Robin] fails to make two home improvement payments to Associates; or

(5) December 2, 1991; or

(6) The residence is sold.

(c) If [Robin's] exclusive use ceases for any reason, then [Eugene] and [Robin] shall immediately list the residence for sale and use good faith efforts to sell the residence. Until the sale, [Eugene] shall have the exclusive use of the residence, subject to the same obligations and privileges [Robin] had in subparagraph (b) above.

(d) If [Robin], during her exclusive use of the residence, decides to sell the house, [Eugene] shall cooperate in good faith with the listing and sale.

(e) From the gross proceeds of the sale of the residence, there shall be paid the costs of the sale including the realtor's commission and the outstanding mortgage and current home improvement loan balances. *The remaining proceed [sic] thereafter shall be divided as follows:*

*(1) To [Eugene], Twenty–Seven Thousand Five Hundred Dollars and no cents ($27,500.00) plus whatever payments [Eugene] has made on the mortgage or current home improvement loan after the date of this Agreement; and*

*(2) To [Robin], the balance.*

(f) The parties agree and by the [c]ourt's approval of this Agreement, the [c]ourt so orders that it shall retain jurisdiction over the aforementioned real property until the division and distribution of the sale proceeds from the sale of [the residence] has been effected.

(Emphasis and footnote added.)

Robin made all mortgage payments on the residence until August 1, 1988. Tragically, on August 6, 1988, the residence caught on fire and Robin was killed in the blaze. By this time, Eugene had moved to the mainland, apparently without leaving a forwarding address. Because no further mortgage payments on the residence were made, the loan was soon in default.

Through a mesne assignment[4] dated August 7, 1989, Defendant–Appellee Countrywide Funding Corporation (Countrywide) acquired Eugene and Robin's promissory note and mortgage loan on the residence. Thereafter, on September 11, 1989, Countrywide filed a complaint in the circuit court against Eugene, Robin, and other defendants with an interest in the residence, seeking to foreclose on the residence. Because Countrywide was unable to locate and personally serve the complaint on Eugene or any of Robin's heirs, Eugene and Robin's heirs were served by publication. On January 29, 1990, upon the failure of Eugene and any of Robin's heirs "to appear or otherwise answer" the com-

---

**3.** The complaint in this case alleges that Associates Financial Services Company of Hawaii, Inc. was "made a party defendant by virtue of the Mortgage dated June 6, 1986, in the amount of $9,999.99, recorded ... in Liber 19647, Page 710."

**4.** Black's Law Dictionary illustrates a mesne assignment as follows:

If A. grant a lease of land to B., and B. assign his interest to C., and C. in his turn assign his interest therein to D., in this case the assignments so made by B. and C. would be termed "mesne assignments;" that is, they would be assignments intervening between A.'s original grant and the vesting of D.'s interest in the land under the last assignment.

Black's Law Dictionary 990 (6th ed.1990).

plaint for foreclosure, an order of default was entered against them.

On March 6, 1990, the circuit court entered an order granting Countrywide's motion for default judgment, summary judgment, and decree of foreclosure, and determined that Eugene and Robin owed Countrywide a total of $162,787.69, plus additional per diem interest at $39.18 to the date of payment of the indebtedness. After a court-appointed commissioner sold the residence and paid off all outstanding debts, attorneys' fees, and costs pursuant to court instruction, a surplus of $30,633.62 in foreclosure sale proceeds remained.

On August 20, 1990, the commissioner filed a "Motion for an Order Depositing Excess Funds with the Clerk of the Second Circuit Court[.]" According to the commissioner, sale of the property closed on August 9, 1990 and "[a]ll parties were paid in accordance with the escrow instructions and the orders" of the court. The commissioner requested "that an interest bearing account be opened with the Clerk of the Second Circuit and that said excess sums be deposited into said account for holding until such time that it is determined who should receive such excess funds." The commissioner also requested a fee of $250.00 for the additional work pertaining to the motion, as well as additional costs "related to this [m]otion."

The commissioner's motion was heard before then-circuit court judge Richard Komo (Judge Komo) on August 30, 1990.[5] On September 20, 1990, the circuit court filed a written order that ordered, in relevant part,

1. That the funds held by Standard Title and Escrow, Escrow No. D 11591 D less the amount to be paid to the Commissioner be deposited with the Clerk of the Second Circuit Court and that the Clerk is hereby authorized to hold said moneys in an interest bearing account until further order of this [c]ourt. The amount presently held by Standard Title and Escrow is $30,633.62. Standard Title and Escrow shall pay the amounts that ar [sic] indicated herein within seven (7) working days from the filing of this Order.

2. That the [c]ourt hereby finds that the Commissioner's request for additional

compensation in the amount of $250.00 is reasonable. Said sum shall be paid to the Commissioner by Standard Title and Escrow upon deposit of the excess amount with the Clerk of the Second Circuit Court. . . .

About eight years later, Eugene learned about the fire and Robin's death. He also discovered that the residence had been sold and that the deposit of the foreclosure sale surplus proceeds had grown to $41,193.85 with the accrued interest. On August 19, 1998, Eugene filed a "Motion for Order Releasing Unclaimed Funds[.]" In a memorandum in support of his motion, Eugene argued that he was entitled to "90.51 percent of the funds now being held by the [c]ourt" and Robin's heirs, "whoever they may be, are entitled to the other 9.49%." Eugene provided the following analysis for his argument:

The original amount deposited with the [c]ourt from the proceeds of the foreclosure sale was $30,383.62. The total amount as of August 18, 1998, with accrued interest, was $41,193.85.

Pursuant to the Divorce Decree, [Eugene's] share of the proceeds should have been $27,500, and [Robin] (or her heirs, since she is dead) would get the rest. Of course, [Eugene] is also entitled to the interest that has accrued on his share of the proceeds since the date they were deposited in the [c]ourt's interest bearing account. [Robin's] heirs are entitled to the other $2,883.62 that was deposited in the account, plus the interest that has accrued on that sum.

To determine the total now due to [Eugene], the simplest method of calculation is to determine the percentage of the $30,383.62 which was due to him upon the sale of the property, and then apply that percentage to the total amount now in the account including interest.

$27,500 divided by $30,383.62 is .9051, so [Eugene's] share is 90.51% of whatever is now in the interest bearing account. Therefore, [Eugene] is entitled to an order that the Clerk of Court disburse to him as soon as possible 90.51% of the amount in the account as of the date of disbursement.

**5.** The transcripts from the hearing are not in the    record.

On December 8, 1998, following a November 13, 1998 hearing on Eugene's motion, the circuit court [6] entered an order granting in part and denying in part Eugene's motion. The circuit court awarded Eugene $27,500.00, the amount awarded him in the divorce decree, but denied Eugene any interest on said sum.

On December 29, 1998, Eugene filed a "Motion for Relief from the Portion of the Court's Order of December 8, 1998 Regarding Interest on Unclaimed Funds[,]" pursuant to Rule 60(a) and (b) of the Hawai'i Rules of Civil Procedure (Eugene's motion for relief). At a January 27, 1999 hearing before the circuit court [7] on Eugene's motion for relief, the following colloquy ensued:

[EUGENE'S ATTORNEY]: ... Basically, the bottom line, your Honor, is someone's got to get the money. It is the interest on [Eugene's] money. I can't think of anybody else who should get it but him.

THE COURT: ... I guess the situation is here, [Eugene and Robin] were married and got a divorced [sic] and they entered into this settlement agreement in their divorce, which is the basis of what we're here for, and what happened was the—they got divorced. [Eugene] took off. He retained his interest in the property, however, although [Robin] had certain responsibility for payments, and she also had sole possession of it.

But the agreement does specifically provide what happens to the property and what payments are to be made in the event of the death of her, which is what occurred.

For some reason, apparently, he never stayed in touch with her or didn't monitor his investment here.

[EUGENE'S ATTORNEY]: Well, he wasn't aware—

THE COURT: That's why the money—

[EUGENE'S ATTORNEY]: He wasn't aware that she died.

THE COURT: But he had an investment in the property and one would think, I mean at some point he was entitled to a payment from the property. No question about that. And the agreement contem-

plates that and contemplates that one of the events would be her death.

[EUGENE'S ATTORNEY]: Well, he contemplated, first of all, that she was young and would not die.

Secondly, that if she ever did sell the property, that she would honor the obligation and pay him a portion of the proceeds, and that would be, you know, done in escrow, because otherwise it would be a theft and he trusted [her] to that degree that she wasn't going to run off with the whole thing.

Our point is at the time the property was sold, that's when the interest of both [parties] essentially was settled and neither party had any—the divorce agreement had not contemplated anything happening after the date of sale of the property.

So at that point they said, okay when the property's sold, here [sic] we're going to split it up. [$27,500] for [Eugene]. The balance for [Robin], and that's that. Divide the money and go your separate ways. Yes, she died. That was an event, you know, causing the property to be sold, and that put an end to the divorce agreement and put this matter in the hands of the [c]ourt.

At that point the [c]ourt now has [$]27,500 for [Eugene's] benefit. 3,000 odd dollars for [Robin's] benefit, and no one comes forth because the heirs are like my client, the heirs maybe don't exist or didn't come forth.

So, finally, the interest—the money sits there, Judge Komo put it in an account and presumably the reason he put it in the interest bearing account is to preserve the principle and gather interest for whoever it belonged to.

THE COURT: That's what we're doing is looking at the agreement to see who it belongs to. Here's what the agreement says.

When [Robin's] exclusive use ceases, and one of the events is specifically defined as her death, after payment of all expenses it will be divided as follows. [Eugene] will

receive a payment of $27,500.00 plus any payments he's made on the mortgage or home improvements. Two, [Robin] gets the balance.

And you're arguing, well, it's not equitable because he didn't show up to get his share. That's your argument. So he ought to get a prorata [sic] share on the money that's accrued between the time that the money was deposited and the time that he appeared and asked for his share.

[EUGENE'S ATTORNEY]: I'm saying the words that the balance that the [c]ourt just read, to [Robin] the balance, that refers to the balance of the money that is disbursed at the time—so the balance of the money received from the sale of the home.

So we have [$]27,500 for [Eugene]. [$]3,500, whatever it is, for [Robin]. That's the balance. That [$]3,500. The balance is not [$]3,500 plus whatever interest accrues on [Eugene's $]27,500 over the years. It doesn't make sense to give the heirs, if there be any, a windfall that they should get interest accruing on [Eugene's $]27,500 for eight years.

THE COURT: I understand the argument. I disagree, and I think that would require me to rewrite their divorce agreement. I'll deny the motion.

On May 8, 2000, the circuit court entered an order denying Eugene's motion for relief. The same day, the circuit court entered judgment in favor of Eugene for $27,500.00 but denying him "any of the interest which has accrued on the $27,500." The circuit court also entered a Hawai'i Rules of Civil Procedure Rule 54(b) [8] certification that the judgment was final. This timely appeal followed.

DISCUSSION

A.

[redacted] The circuit court apparently denied interest to Eugene on the $27,500.00 award because it construed the divorce decree, which incorporated Eugene and Robin's divorce agreement, as limiting Eugene's award to said amount. The interpretation of a divorce decree that incorporates a divorce agreement is a question of law that is freely reviewable on appeal. *Jendrusch v. Jendrusch*, 1 Haw.App. 605, 609, 623 P.2d 893, 897 (1981). We conclude that the circuit court erred in its interpretation and application of the divorce decree.

[redacted] Under the divorce agreement, Robin was given exclusive use of the residence until one of various events occurred. The first of the listed events to occur was Robin's death. Pursuant to the divorce agreement, once Robin's exclusive use ceased for any reason, Eugene and Robin were to "immediately list the residence for sale and use good faith efforts to sell the residence. Until the sale, [Eugene] shall have the exclusive use of the residence[.]" Additionally, once the residence was sold, the gross proceeds were to be distributed as follows:

> (e) From the gross proceeds of the sale of the residence, there shall be paid the costs of the sale including the realtor's commission and the outstanding mortgage and current home improvement loan balances. The remaining proceed [sic] thereafter shall be divided as follows:
>
> (1) To [Eugene], Twenty-Seven Thousand Five Hundred Dollars and no cents ($27,500.00) plus whatever payments [Eugene] has made on the mortgage or current home improvement loan after the date of this Agreement; and
>
> (2) To [Robin], the balance.

8. Hawai'i Rules of Civil Procedure Rule 54(b) provides as follows:

(b) **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In this case, Eugene did not become aware of Robin's death until eight years later, after the sale of the residence had occurred pursuant to a foreclosure action. Under the clear language of the divorce agreement, however, Eugene was entitled to be paid $27,500.00 and Robin's heirs were entitled to be paid $2,883.62 at the time the amount of the gross foreclosure sale surplus proceeds was determined. Therefore, when the gross proceeds were determined and deposited in an interest-bearing account pursuant to the circuit court's order, Eugene and Robin's heirs became entitled to their respective share of the proceeds and, thereafter, to any interest that accrued on their respective shares. The circuit court, accordingly, erred when it concluded that it was authorized under the divorce agreement to distribute only $27,500.00 of the gross proceeds to Eugene.

Accordingly, we vacate: (1) that portion of the circuit court's December 8, 1998 "Order Granting in Part and Denying in Part [Eugene's] Motion for Order Releasing Unclaimed Funds" that denied Eugene interest accrued on the $27,500.00; (2) the "Order Denying [Eugene's] Motion for Relief from the Portion of the Court's Order of December 8, 1998 Regarding Interest on Unclaimed Funds," entered by the circuit court on May 8, 2000; and (3) that part of the May 8, 2000 Judgment entered by the circuit court that ordered that the clerk of the circuit court "shall not disburse to [Eugene] any of the interest which has accrued on the $27,500." On remand, the circuit court is directed to distribute to Eugene 90.51 percent of the accrued interest on the original deposit.

### B.

■ We take this opportunity to alert the trial courts of the existence of Hawaii Revised Statutes (HRS) chapter 523A (1993 & Supp.2000), the Uniform Unclaimed Property Act, which sets forth detailed procedures that must be followed when intangible

property in the court's possession [9] remains unclaimed by the owner for specified periods and is, therefore, presumed to be abandoned. Of particular relevance to the courts are the following statutory sections:

■ HRS § 523A–13 (1993), entitled "Property held by courts and public agencies," which states in pertinent part: "Intangible property held for the owner by a court ... which remains unclaimed by the owner for more than one year after becoming payable or distributable is presumed abandoned."

■ HRS § 523A–17(a) (1993), which provides that "[a] person holding property tangible or intangible, presumed abandoned and subject to custody as unclaimed property under this part shall report to the director [of finance] concerning the property as provided in this section."

■ HRS § 523A–17(e)(1993), which spells out a process that requires a holder in possession of property presumed abandoned to send written notice to the apparent owner of property "[n]ot more than six months before filing the report [of abandoned property] required by this section[.]"

■ HRS § 523A–18 (Supp.2000), which requires the state director of finance to publish notices of "persons appearing to be owners of abandoned property[.]"

■ HRS § 523A–19 (1993), which requires that persons required to file a report of abandoned property shall "within six months after the final date for filing the report ... pay or deliver to the director [of finance] all abandoned property required to be reported."

In this case, since the circuit court never reported the surplus foreclosure proceeds to the director of finance as required by HRS § 523A–17(a), it must, on remand, comply with HRS § 523A–19(b), which requires that

9. We note, however, that unclaimed moneys that are deposited by way of bail or bond are subject to Hawaii Revised Statutes § 804–2 (1993), which provides:
    **Unclaimed bail money.** All money deposited by way of bail or bond, in any proceeding before any court, which has not been declared forfeited, and not claimed within two years

after the final disposition of the cause of action in which the money was deposited, shall, after due notice to the person who has deposited the same, by the then custodian of the money and upon order of court, be paid over to the director of finance of the State as a state government realization.

a "verified written explanation of the proof of [Eugene's] claim" be filed with the state director of finance. The circuit court must also comply with the requirement set forth in HRS § 523A–17 that written notice of the proceeds be provided to Robin's heirs [10] and shall, thereafter, file a report with the director of finance, as required by HRS

§ 523A–17, with respect to the balance of the deposit that is presumed to have been abandoned by Robin's heirs.

10. Perhaps Defendant–Appellant Eugene S. Bilotti will be able to provide some information regarding the location of Defendant–Appellee Robin B. Bilotti's heirs.